**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

Will Lehman,                )
                              )
        Plaintiff,        )
                              )
                              )      Case No.
               v.          )
                              )
United States Department of Labor; and  )
Secretary of Labor Lori Chavez-DeRemer,  )
                              )
                              )
                              )
        Defendants.    )

## COMPLAINT

### INTRODUCTION

1.      On June 25, 2024, this Court ordered the United States Department of Labor ("the Department") to conduct further proceedings to address the merits of a complaint submitted by 2022 United Auto Workers ("UAW") presidential candidate Will Lehman claiming widespread voter suppression in that year's national officers' election. In its opinion and order, the Court determined that the Department's refusal to address Lehman's complaint on the merits was "arbitrary and capricious," granting in part Lehman's motion for judgment on the pleadings and remanding the complaint to the Secretary of Labor "for further proceedings, which, at a minimum, must consist of the production of a supplemental statement of reasons." *Lehman v. U.S. Dep't of Labor et* al., No. 2-23-cv-11585, at slip op. *17 (E.D. Mich. June 25, 2024).

1

2.      Since the date of that order, the Department has not brought an action on Lehman's behalf and has not provided any reasons for its failure to do so.

3.      While the Court did not specify a deadline by which the Department must act on Lehman's complaint and did not retain jurisdiction, the passage of nearly a year since the Court's order amounts to a *de facto* refusal to act on Lehman's complaint. Especially in the context of a complaint regarding the conduct of an election, where time is axiomatically of the essence, the extremely long delay on the part of the Department effectively leaves a rank-and-file autoworker like Lehman with no meaningful remedy for alleged election violations.

4.      Before, during and after the election, Lehman repeatedly complained to the court-appointed monitor overseeing the election—as well as to this Court—of widespread suppression of votes by UAW officials. Specifically, he demonstrated in empirical detail that the union officials had failed to provide effective notice of the election to its members, that the membership lists and outreach to members were seriously flawed, that as a result the union's members largely were unaware of the election or their right to vote and had no ballot access, and that the turnout was woefully low. *See Lehman v. UAW*, No. 22-12790 (E.D. Mich.).

5.      Lehman pointed in particular to the heavy reliance on the Local Union Information System (LUIS) to provide "notice" of the election, a mechanism that favored local officials and their close associates and disfavored rank-and-file members and retirees. While local officials have access to that system and their contact information is likely to be accurate and up-to-date, the opposite is true for rank-and-file members and retirees. For Lehman and his supporters, who campaigned as rank-and-file autoworkers against the entrenched bureaucracy, they complained that this mechanism substantially undermined their ability to meaningfully

participate in the election and unfairly favored the candidates with close ties to the entrenched officialdom.

6.      Lehman also demonstrated that union officials have sophisticated and accurate means to give notice of an election, given that they routinely use those means to campaign for support for favored candidates in state and federal elections. Lehman contends that refusal by union officials to employ those means to notify the union's own membership in a union election lacks any innocent explanation.

7.      Over a protracted period, the campaign by Lehman and his supporters for the democratic rights of the rank-and-file has been met with slow-walking and stonewalling by the union and the Department. The ongoing failure of the Department to act only confirms the belief shared by Lehman and the thousands of workers who voted for him that there is no satisfactory answer to the concerns he raised.

8.      With this action, Lehman once again contends that the government's failure to act on his complaint was an abuse of discretion, arbitrary and capricious, and contrary to law.

## PARTIES

9.      Plaintiff Will Lehman is a Mack Trucks worker in Macungie, Pennsylvania, a dues-paying member of the United Auto Workers ("UAW"). He was a rank-and-file socialist candidate for president of the union in the 2022 national leadership elections. His campaign, which won support from almost 5 percent of the ballots cast, called for returning power from the bureaucracy to the rank-and-file workers on the shop floor.

10.     The Department of Labor is an executive agency headquartered in Washington D.C., with regional offices in Detroit. Defendant Lori Chavez-DeRemer is the Acting Secretary of Labor.

## JURISDICTION AND VENUE

11.     Lehman brings this suit under Title IV of the Labor Management Reporting and Disclosure Act (LMRDA) and the Administrative Procedures Act (APA) seeking judicial review of the refusal of the United States Department of Labor (DOL) and Acting Secretary of Lori Chavez-DeRemer to act on his complaint regarding the conduct of the 2022 national leadership elections.

12.     This Court has jurisdiction of the claims under 28 U.S.C. §1331 and 29 U.S.C. § 481 et seq. The Court also has jurisdiction by virtue of the Consent Decree in *US v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, No. 2:20-cv-13293-DML-RSW (Doc. No. 10) (E.D. Mich January 29, 2021).

13.     Venue is proper in this judicial district because the UAW is headquartered here, because this Court entered the Consent Decree; because the Department of Labor's Office of Labor-Management Standards ("OLMS") rejected Lehman's complaint through its Detroit-Milwaukee District Office; and because the Court's order on Lehman's prior complaint, which Lehman contends was not followed, was entered here. *See Lehman v. U.S. Dep't of Labor et* al., No. 2-23-cv-11585 (E.D. Mich. June 25, 2024).

## FACTS

14.     On January 21, 2021, the UAW entered into a Consent Decree with the U.S. Department of Justice. In the Consent Decree, the UAW "acknowledge[d] that there have been criminal convictions, allegations, sworn testimony, and judicial findings of past problems with fraud, corruption, and criminal conduct by certain officials within the UAW and certain of its related entities." *Id.*, *108. The consent decree stated: "UAW members [must] be able to

democratically participate in their union's affairs as guaranteed by the Labor Management

Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401, *et seq.*" *Id*.

15.     In a December 2021 referendum, two thirds of voters authorized the union to

direct elections, despite the campaign by union officials against for a "no" vote.

16.     As a candidate duly nominated at the union convention in July 2022, Lehman

contacted the Monitor by email at least 18 times between July and early November 2022 to

complain about election irregularities, including dissemination of election information and ballot

access.

17.     In November 2022, as the scale of the low turnout came into view, Lehman filed

an emergency action and a motion for a preliminary injunction to address the lack of notice to

members. The Court denied the motion for preliminary injunction and dismissed the case,

holding that Lehman's lawsuit implicated Title IV of the LMRDA, and therefore the Court did

not have subject matter jurisdiction to adjudicate the claims. Under Title IV, Lehman was

prohibited from filing an action directly; instead, he was required to first present his election

protests to the Union and then to the Secretary of Labor. *Lehman*, 2022 WL 17184564, at *1

(E.D. Mich. Nov. 23, 2022)

18.     As Lehman had warned in November 2022, turnout in the first round of the

election was a catastrophically low 9 percent. More ballots were returned as "undelivered" than

were cast. Roughly 36,000 fewer votes were cast than in the earlier referendum. Turnout in some

of the major academic locals on the West Coast was lower than 1 percent. As a result of this first

round of voting, Lehman was excluded from a run-off election.

19.     Lehman filed a formal post-election protest with the monitor on December 19,

2022, which is attached as **Exhibit A**. In this protest, he documented the reasons for the low

turnout with empirical data and also complained that his previous pre-election protests to the monitor had not been addressed. The monitor denied all of Lehman's protests together on March 19, 2023, claiming that "it is not clear turnout was 'low'" and generally discounting much of Lehman's evidence as "unsubstantiated." Denying the protest, the monitor counted a total of 34 separate grievances that Lehman had raised in the course of the election. The monitor's determination is attached as **Exhibit B.**

20.     On March 29, 2023, Lehman filed a complaint with the Department challenging the monitor's determinations as to his 34 grievances, which is attached as **Exhibit C**. The Department denied the complaint on June 29, 2023, without responding to Lehman's evidence and without providing any factual or legal explanation for the denial.

21.     Lehman filed a second federal lawsuit on July 3, 2023 challenging the Department's failure to act on his complaint. In this lawsuit, he contended that he had duly presented his complaints to the union and to the Department, but that no effective action had been taken. On August 8, 2023, the Department issued what purported to be a "statement of reasons" for denying the complaint, determining that 30 out of the 34 grievances were supposedly "untimely." The Department's "statement of reasons" for those 30 grievances is reproduced in its entirety in the Court's June 25, 2024 opinion and order, which is attached as **Exhibit D**.

22.     On June 25, 2024, this Court ruled that the Department's determination that "30 out of 34 of the claims were untimely was irrational and grounded in an arbitrary and capricious construction of the Election Rules that is not supported by their plain text or the prevailing case law."

23.     The Court granted in part Lehman's motion for judgment on the pleadings and remanded the complaint to the Secretary of Labor "for further proceedings, which, at a minimum, must consist of the production of a supplemental statement of reasons." Slip op., *supra*, *17. The Court did not retain jurisdiction or provide any deadline for the Department to act. *Id.*

24.     Since the date of that order, the Department has not produced a supplemental statement of reasons and has not taken any action in response to Lehman's complaint.

**COUNT ONE: Judicial Review of Department of Labor's Refusal to Act on Rank-and-File Union Member's Complaint (LMRDA)**

25.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

26.     Section 101 of the LMRDA (the "bill of rights for union members") guarantees the right of union members to vote in elections, which includes the right to vote on an equal basis and in a meaningful manner. Section 401 of the LMRDA includes additional democratic guarantees regarding the conduct of elections.

27.     Union members are guaranteed a "reasonable opportunity" to vote in a union election: "The statutory protection of the right to vote implies that there must be a reasonable opportunity to vote. Thus, there is an obligation on the labor organization to conduct its periodic election of officers in such a way as to afford all its members a reasonable opportunity to cast ballots." 29 C.F.R. § 452.94.

28.     Lehman submitted a timely complaint to the Department alleging that his rights guaranteed by these provisions were violated, both as a UAW member and as a candidate in the 2022 UAW national elections. As a result of these violations, he contended that his ability to meaningfully participate in the elections as a candidate and campaign for his positions was

diminished. Further, the total number of votes cast for him was substantially less than it would have been in a lawful election.

29.     A federal district court may review the decision of the Department of Labor not to act on a rank-and-file union member's complaint.

30.     The Department of Labor's refusal to take any action following this Court's June 25, 2024 order amounts to a *de facto* refusal to act on Lehman's complaint. As such, this decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

31.     Under this claim, Lehman seeks, without limitation, an order requiring that the Department of Labor and the Acting Secretary reopen the aforementioned 30 pre-election grievances in his complaint; that the Department of Labor and the Acting Secretary provide him with a statement of reasons addressing the merits of why his complaint was denied; and that the Court order such other relief that the Court may deem appropriate.


Dated: June 19, 2025

By: /s/Eric Lee
Eric Lee (Mich. Bar # P80058)
24225 W 9 Mile Rd Suite #140
Southfield, MI 48033
248-602-0936
elee@diamantelaw.com

Thomas C. Seabaugh (Ca. Bar #272458)
355 S. Grand Ave Ste 2450
Los Angeles, CA 90071
213-225-5850
tseabaugh@seabaughfirm.com


Attorneys for Will Lehman